UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

Holly Jarvis,

Plaintiff,

v.                                      5:26-CV-252
(MAD/MJK)

National Labor Relations Board, *et. al.*

Defendants.

---

Holly Jarvis, *pro se*

Mitchell J. Katz, U.S. Magistrate Judge

To the Honorable Mae A. D'Agostino, U.S. District Judge:

## ORDER & REPORT- RECOMMENDATION

Jarvis began this action on February 18, 2026, by filing a complaint, and moving for leave to proceed *in forma pauperis* ("*IFP*") (Dkts. 1, 2). The Clerk sent Jarvis's Complaint and *IFP* application to this Court for review. (Dkts. 1, 2).

## I.    BACKGROUND

During the 2024–25 work season, Jarvis allegedly "experienced workplace misconduct including unfair write-ups, favoritism in scheduling, inequitable treatment of tips, volunteers receiving better compensation and benefits than employees, and a hostile work environment." (Dkt. 1, at ¶13) (cleaned up). She states that she reported

these issues to human resources around "April–May 2025." (Dkt. 1, at ¶14) (emphasis removed). Jarvis then allegedly submitted her complaint in writing and provided a copy to her direct supervisor. (Dkt. 1, at ¶15). "[N]o investigation or corrective action was taken." (Dkt. 1, at ¶16).

Jarvis then sought assistance from her labor union—Local 150. (Dkt. 1, at ¶17). Around June 2025, Jarvis "submitted complaints to the union alleging failure of representation, employer favoritism, retaliation, and ongoing unfair labor practices." (Dkt. 1, at ¶18). The union allegedly failed to represent Jarvis or correct the misconduct. (Dkt. 1, at ¶19). Jarvis states that she was then "retaliated against, including being excluded from seasonal work and not being called back, resulting in financial and emotional harm." (Dkt. 1, at ¶20).

After allegedly exhausting internal and union remedies, Jarvis filed an unfair labor practice complaint with the NLRB. (Dkt. 1, at ¶21). Jarvis states that she "communicated" with Besantis, who had received her complaint. (Dkt. 1, at ¶22). She also states that she "communicated" with Metzger, who had received her complaint. (Dkt. 1, at ¶23). Jarvis then allegedly spoke with "an unnamed male NLRB employee who

2

stated that he handled incoming mail and informed Jarvis that the NLRB office had been closed for remodeling for several weeks." (Dkt. 1, at ¶24) (cleaned up). The unnamed male employee located Jarvis's mailed complaint and returned it to her "approximately one month later." (Dkt. 1, at ¶25) (emphasis removed).

On December 11, 2025, Jarvis states that she contacted the NLRB Office of Congressional and Public Affairs "to escalate the matter, explaining the full history of ignored complaints and retaliation." (Dkt. 1, at ¶27). The NLRB allegedly "responded only with a generic form email, failing to address Jarvis's specific allegations or the agencies prior inaction." (Dkt. 1, at ¶28). Jarvis states that, as of the filing of this Complaint, "the NLRB has taken no substantive action on [her] complaints." (Dkt. 1, at ¶29).

## II.    *IFP* APPLICATION

Jarvis declares in her *IFP* application that she is unable to pay the filing fee. (Dkt. 2). After reviewing her application, this Court finds Jarvis is financially eligible for *IFP* status.

## III.   STANDARD OF REVIEW

In addition to determining whether plaintiffs meet the financial criteria to proceed *IFP*, courts must also review the sufficiency of the allegations in the complaint under 28 U.S.C. § 1915. That statute requires a court to dismiss a case "at any time" if it determines that the action is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

When determining whether an action is frivolous, courts must consider whether the complaint lacks an arguable basis in law or in fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process and to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974).

Courts have a *duty* to show liberality toward *pro se* litigants and must use extreme caution when *sua sponte* dismissing *pro se* complaints before adverse parties have been served and had an opportunity to

4

respond. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee). But courts still have a *responsibility* to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See id.*

## IV.   DISCUSSION

The District Court should dismiss Jarvis's Complaint for four reasons. First, the District Court lacks jurisdiction to review Jarvis's Complaint. Second, the APA does not generally allow judicial review of NLRB decisions. Third, Jarvis has failed to state a claim on which relief can be granted. Fourth and finally, Jarvis is not entitled to mandamus. In consequence, the District Court should dismiss Jarvis's Complaint.

### A. The District Court lacks jurisdiction over Jarvis's case against the NLRB.[1]

The District Court should dismiss Jarvis's Complaint as to the NLRB for two reasons. First, the District Court lacks authority to

---

[1] The Office of Congressional and Public Affairs, NLRB, is part of the NLRB's internal organization. Neither the NLRA nor case law suggests that it is an independent body that is amenable to suit. *See, e.g.*, *Jamestown Veneer & Plywood Corp. v. NLRB*, 13 F. Supp. 405, 407 (W.D.N.Y. 1936) (explaining that the NLRB "is a body corporate with legal capacity to be a party plaintiff or defendant in the federal courts insofar as the statute gives the right of suit.") (cleaned up).

review the NLRB's prosecution decisions. Second, district courts generally lack jurisdiction over NLRB cases. Therefore, the District Court should dismiss Jarvis's Complaint for lack of jurisdiction.

First, Jarvis's Complaint fails because judicial review is unavailable for NLRB prosecution decisions. The NLRB is governed by the NLRA. *See* 29 U.S.C. § 151 *et seq*. The NLRA "differentiate[s] between 'prosecutorial' determinations, to be made solely by the General Counsel and which are not subject to review under the [NLRA], and 'adjudicatory' decisions, to be made by the [NLRB] and which are subject to judicial review." *NLRB v. United Food & Commercial Workers Union, Local 23*, 484 U.S. 112, 129–130 (1987).

For prosecutions, the NLRA gives the NLRB General Counsel "final authority" concerning "the filing, investigation, and prosecution of unfair labor practice complaints." *Id.* at 114 (cleaned up). Basically, "the NLRA is meant to be, and is, a comprehensive statute concerning the disposition and review of the merits of unfair labor practice charges" and limits judicial review to orders issued by the board that issue well after the General Counsel has exercised prosecutorial discretion. *Id.*, at 131; *see Id.*, at 128 (explaining that the NLRA "plainly cannot be read to

6

provide for judicial review of the General Counsel's prosecutorial function.").

The District Court does not have jurisdiction over Jarvis's case. Jarvis sued because the NLRB "unlawfully withheld," "unreasonably delayed," and "fail[ed] to investigate and process" her unfair labor practice complaints. (Dkt. 1, at ¶¶ 31–32). But Jarvis's contentions go to the prosecutorial function that is reserved to the NLRB general counsel. *See United Food*, 484 U.S. at 114 (1987) (explaining that the General Counsel has "final authority" concerning "the filing, investigation, and prosecution of unfair labor practice complaints."). Put differently, Jarvis seeks judicial review based on an NLRB investigation, or lack thereof. But the Court is not permitted to review an NLRB investigation. *See United Food*, 484 U.S. at 129 (stating that courts cannot review NLRB prosecutions). Therefore, the District Court should dismiss Jarvis's Complaint as to the NLRB.

Second, Jarvis's Complaint fails because the District Courts generally lack authority to review NLRB cases—including this one. "The NLRA does not provide for district court jurisdiction to review NLRB decisions." *Pilchman v. NLRB*, 831 F. App'x 46, 47 (2d Cir. 2020);

*see United Electrical Contractors Asso. v. Ordman*, 366 F.2d 776 (2d Cir. 1966) (holding that "district courts may not review the day-to-day exercise of the discretion given to the General Counsel in the issuance of Board unfair labor practice complaints.") (cleaned up). Rather, the NLRA provides that "[a]ny person aggrieved by a final order of the Board . . . may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in . . . by filing in such a court a written petition praying that the order of the Board be modified or set aside." 29 U.S.C. § 160(f); *see also Madonna v. Atlas Transit Mix Corp.*, 1999 WL 1288943, 2* (E.D.N.Y. Oct. 22, 1999) (explaining that "jurisdiction for the enforcement of a board order and to hear any appeal therefrom reside only with the courts of appeals.") (cleaned up).

Still, if a plaintiff asserts a constitutional violation, then a district court "might, and should, dispose of all other questions which arose, even though they would not have been independently justiciable." *Fay v. Douds*, 172 F.2d 720, 723 (2d Cir. 1949). But Jarvis is bringing claims under the APA and seeking mandamus—she is not alleging a constitutional violation. (Dkt. 1, at ¶¶30–35). In the end, the NLRB has

neither issued any final order on Jarvis's charges, nor has Jarvis alleged a constitutional violation, so judicial review is precluded at this stage. *See* 29 U.S.C. § 160(f).

### B. The District Court should dismiss Jarvis's claim because the APA does not generally cover NLRB claims.

The District Court should dismiss Jarvis's Complaint because the APA does not generally allow for judicial review of NLRB decisions. The APA grants judicial review for agency decisions, unless a statutory exclusion applies. Here, the National Labor Relations Act ("NLRA") provides just such an exclusion. Therefore, the District Court should dismiss Jarvis's Complaint seeking review under the APA.

APA judicial review is generally precluded by the NLRA. Chapter 7 of the APA, 5 U.S.C. § 701 *et seq.*, provides a right of judicial review of agency action to "[a] person suffering legal wrong because of agency action . . . ." 5 U.S.C. § 702. Even so, chapter 7 does not apply "to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). And here, the NLRA "leaves no doubt that it is meant to be, and is, a comprehensive statute concerning the disposition and review of the merits of unfair labor practice charges." *United Food*, 484 U.S. at 131. In fact, the NLRA

9

"exhaustively sets out the stages through which such charges may pass," and "judicial review is expressly provided only in respect of Board orders." *Id.* With that, "Congress purposely excluded prosecutorial decisions from [APA] review," and "5 U.S.C. § 701(a)(1) bars [judicial] review" of the General Counsel's discretionary decision not to file a complaint. *Id.* at 131, 133. Because Jarvis's Complaint centers on an alleged failure to timely prosecute her case, *see* (Dkt. 1 at ¶¶ 1–4, 30–32, judicial review under the APA is not available.

It is true that this presumption of unreviewability may be overcome if there are statutory guidelines for the agency to follow when exercising its enforcement powers. *See Heckler v. Chaney*, 470 U.S. 821, 832–35 (1985). But Jarvis has not shown any mandatory legal requirement that General Counsel violated in refusing to issue a complaint, and "[n]othing in *Heckler* . . . affects the reviewability of decisions of the General Counsel under the [NLRA]." *Pat. Off. Pro. Ass'n v. Fed. Lab. Rels. Auth.*, 128 F.3d 751, 753 (D.C. Cir. 1997). Likewise, jurisdiction might lie in the district court where the Board ignores express provisions of the NLRA or acts in excess of its statutory authority. See *Leedom v. Kyne*, 358 U.S. 184, 186–88 (1958). Yet Jarvis

10

has not alleged that the NLRB failed to follow express provisions of the NLRA—she is only alleging that the NLRB should have prosecuted her case more expeditiously.

Jarvis has not alleged anything to bring her case within the ambit of the APA. Therefore, the Court recommends dismissing the Complaint on this score.

### C. Jarvis fails to state a claim against the individual Defendants that she is suing in their official capacities, and she does not seek any relief against them.

The District Court should dismiss Jarvis's Complaint. Plaintiffs, under Rule 8, must plausibly allege that the defendants have unlawfully harmed them. Jarvis has not alleged that Besantis, Metzger, and Doe have harmed her. And even if Jarvis had plausibly alleged that Besantis, Metzger, and Doe had harmed her, they are not proper parties to sue. The District Court should therefore dismiss Jarvis's Complaint against them.

Pleadings must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief …" Fed. R. Civ. P. 8(a)(2). "The purpose of" Rule 8 "is to give fair notice of the claim being asserted so" adverse parties have "the opportunity to file a responsive answer, prepare an adequate defense, and determine

11

whether the doctrine of res judicata is applicable." *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (cleaned up). The rule also requires that the pleading include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought[.]" Fed. R. Civ. P. 8(a)(1), (3). "Although 'no technical form is required,' the Federal Rules make clear that each allegation contained in the pleading 'must be simple, concise, and direct.'" *Cole v. Smrtic*, No. 1:24-CV-847, 2024 WL 4870495, at *2 (N.D.N.Y. 2024) (quoting Fed. R. Civ. P. 8(d)). Allegations "so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

To survive dismissal for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft*, 556 U.S. at 678 (cleaned up).

Although it is not clear whether Jarvis has sued the proper

parties, she has failed to state a claim for which relief can be granted because she has not alleged that Besantis, Metzger, or Doe caused her any injury and she does not seek any relief from them.

To start, the Complaint alleges that Jarvis "communicated" with Besantis, and that Besantis received Jarvis's Complaint. (Dkt. 1, at ¶22). There are no allegations that Besantis took any action, or harmed Jarvis in any way. *See generally*, (*Id.*). Jarvis's allegations as to Metzger mirrors her allegations against Besantis. Jarvis states that she communicated with Metzger and that he received her complaint. (Dkt. 1, ¶23). Jarvis does not allege that Metzger took any action or harmed her in any way. *See generally*, (*Id.*). Next, Jarvis alleges that she spoke with the Doe defendant who "informed" her "that the NLRB office had been closed for remodeling for several weeks." (Dkt. 1, ¶24). One month later, Doe located Jarvis's NLRB complaint and returned it to her. (*Id.* at ¶25). Like Besantis and Metzger, there are no allegations that Doe harmed Jarvis. All told, "the Complaint contains no substantive allegations against" these Defendants. *Santiago v. Annucci*, No. 20-CV-4530, 2021 WL 4392487, at *3 (S.D.N.Y. Sept. 24, 2021) (dismissing Complaint where the Complaint "contain[ed] no substantive allegations

13

against Jones"). Put plainly, Jarvis's Complaint is an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678. And that is not enough to state a claim. *See, e.g., Lesson v. Jane Doe*, No. 1:25-CV-00188 (AMN/TWD), 2025 WL 1291533 (N.D.N.Y. May 5, 2025) (adopting Report and Recommendation dismissing plaintiff's excessive force claim because plaintiff failed to "identify what force" was used against him or "how it was excessive.").

And even if the District Court finds that Jarvis has stated a claim, Besantis, Metzger, and Doe, whom Jarvis has sued in their official capacities, are not proper parties. If Jarvis were suing to recover from a final board order, for example, then the proper party would be the NLRB itself. *See Jamestown Veneer & Plywood Corp.*, 13 F. Supp. at 407 (explaining that the NLRB "is a body corporate with legal capacity to be a party plaintiff or defendant in the federal courts insofar as the statute gives the right of suit.") (cleaned up). Or if she were suing because she believed that the Board had acted in excess of its statutory authority, then the proper party would be the NLRB commissioners. *See Leedom v. Kyne*, 358 U.S. 184, 191 (1958) (affirming lower court decisions in a case brought against NLRB commissioners). Here, Jarvis

is suing various NLRB employees in their official capacities; but even had she stated a claim, these would not be the proper parties to state a claim against. Therefore, even if the District Court found that Jarvis had stated a claim of some sort, it should dismiss her Complaint against Besantis, Metzger, and Doe because they are not proper parties.

*  *  *

As it is, the District Court should dismiss Jarvis's Complaint against Besantis, Metzger, and Doe because she has failed to state a claim. But even if the District Court finds that Jarvis has stated a claim, Besantis, Metzger, and Doe, sued in their official capacities, are not proper parties. And so, the District Court should dismiss Jarvis's Complaint as to Besantis, Metzger, and Doe.

### D.    Jarvis has not shown entitlement to mandamus.

Jarvis has not shown that she is entitled to mandamus. Mandamus requires, among other things, that a claimant show that they lack any other adequate remedy at law. Jarvis has not alleged any facts to support her summary statement that she lacks any adequate remedy at law. So, the Court recommends that the District Court dismiss her Complaint concerning mandamus.

15

Jarvis is not entitled to mandamus. District Courts have jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. But mandamus is a drastic remedy to be reserved for extraordinary circumstances. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980). Because that is so, mandamus will be granted only if the petitioner shows "(1) the presence of a novel and significant question of law; (2) the inadequacy of other available remedies; and (3) the presence of a legal issue whose resolution will aid in the administration of justice." *In re United States*, 10 F.3d. 931, 933 (2d Cir. 1993).

Putting aside Jarvis's failure to state a claim and the District Court's lack of jurisdiction, Jarvis has wholly failed to establish that other remedies are inadequate—which dooms any claim under mandamus from the outset. For example, the NLRB's adjudication of an unfair labor practice case can be reviewed by a circuit court of appeal after the issuance of an order by the NLRB. 29 U.S.C. §§ 160(e), (f); *United Food*, 484 U.S. at 118–122. And the Supreme Court agrees "that this process provides an adequate opportunity to secure judicial

16

protection against possible illegal action on the part of the NLRB"
because the NLRB cannot enforce its own orders and, when a circuit
court reviews an NLRB order, "all questions of the jurisdiction of the
NLRB and the regularity of its proceedings and all questions of
constitutional right or statutory authority, are open to examination by
the court." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 48-49
(1938) (cleaned up).

Because Circuit Court review is available, Jarvis has not shown
that she lacked any other remedy; thus, mandamus is not available.
And so, the District Court should dismiss her Complaint on grounds
that mandamus is unavailable to Jarvis.

* * *

To conclude, the District Court should dismiss this Complaint
because Jarvis the court lacks jurisdiction; APA review is unavailable;
Jarvis has failed to state a claim or allege any harm; and Jarvis is not
entitled to mandamus. Therefore, the Court recommends dismissing
Jarvis's Complaint.

## V.    OPPORTUNITY TO AMEND

Generally, before the court dismisses a *pro se* complaint or any

17

part of the complaint *sua sponte*, the court should afford a plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

The Court recommends that Jarvis's Complaint be dismissed in its entirety *with prejudice and without leave to amend* based on futility. Jarvis has failed to state a claim. Moreover, any amendment would be futile because the APA generally does not cover claims made against the NLRB; the NLRB is largely immune from District Court review and is not amenable to suit for its prosecution decisions; and lastly, mandamus would not be appropriate in this case because Jarvis has other adequate remedies available.

## VI. CONCLUSION

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, ordered that Jarvis's motion to proceed *IFP* (Dkt. 2) is **GRANTED**; and it is further

18

**RECOMMENDED** that Jarvis's Complaint be **DISMISSED WITH PREJUDICE** and **WITHOUT LEAVE TO AMMEND** because APA review is unavailable; the District Court lacks jurisdiction; and Jarvis is not entitled to mandamus, and it is further

**ORDERED** that the Clerk provide Jarvis with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

In accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: April  2, 2026

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge

19

2024 WL 4870495
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,
v.
Honorable Michael W. SMRTIC, et al. Defendants.

No. 1:24-CV-00847 (MAD/CFH)
|
Signed November 21, 2024

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

**REPORT-RECOMMENDATION & ORDER**

CHRISTIAN F. HUMMEL, United States Magistrate Judge

**I. In Forma Pauperis**

**\*1**  Plaintiff pro se Matthew H. Cole ("plaintiff") commenced this action (No. 1:24-CV-00623) on May 6, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). On September 26, 2024, plaintiff submitted what the Court construes to be a supplement to the complaint. [1] See Dkt. No. 7. In lieu of paying this Court's filing fees, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP. [2] Thus, the Court proceeds to its review of the complaint pursuant to 28 U.S.C. § 1915. Plaintiff has also submitted for the Court's review a Pro Se Application for Permission to File Electronically and a Motion to Appoint Counsel. See Dkt. Nos. 4, 5.

**II. Initial Review**

**A. Legal Standards**

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). As the Second Circuit stated,

There are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they

"suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]"

**\*2**  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at \*2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). Pleading guidelines are provided in the Federal Rules of Civil Procedure. Specifically, Rule 8 requires the pleading to include:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought...

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Further, Fed. R. Civ. P. 10 provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant's duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

**\*3**  This Court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999)[3] (quoting Livingston v. Adirondack

Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis.").

**B. Complaint**

Plaintiff's civil cover sheet indicates that he seeks to bring this action pursuant to "Title U.S.C. 18 Section 241, Conspiracy Against Rights & Title U.S.C. 18 Section 242 Deprivation of rights Under Color of Law." Dkt. No. 1-1 at 1. The civil cover sheet further provides that his cause of action involves, "Violation of Due process, Speedy Trial Rights, Ineffective Assistance of Counsel. I feel I am being targeted for being black and gay." Id.

Plaintiff's form complaint checks the box indicating that he seeks to bring this case pursuant to 42 U.S.C. § 1983. See Compl. at 3. In response to the question in the form complaint asking in "what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials," plaintiff responds, "Due Process, 30.30 Speedy Trial Violation, Ineffective Assistance of counsel."[4] Id. In response to a question asking him to explain "how each defendant acted under color of state or local law," plaintiff states "Each judge deliberately denied me due process, and refused to look into the paperwork to see that i was improperly denied my speedy trial rights. It was a tean [sic] effort. The ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me. All mentioned actions were done and upheld even after I showed federal law with supportive case law as a pro se litigant." Id.

Plaintiff provides that his "case is still on appeakl [sic] in Appellate Court Third Department. I feel they are guilty, or part of what I call a scandal. I went to them from the very start with a complaint to the grievance committee, where they denied any wrongdoing. It must be ok to violate Constitutional rights there. This is from March 2019 to present" Id.

In response to a question that asks plaintiff to state the facts underlying his claims, plaintiff states, "Please see attached Article 78 that is attached. It was dismissed being in the wrong court, but is on point." Id. at 4. Plaintiff did not provide the Court with any such attachment and has not submitted any Article 78 materials. See Compl., Dkt. No. 7.

In response to the form complaint's question asking about any injuries suffered as a result of the conduct he complains of, plaintiff states, "Sever [sic] depression over 20 years, irreperable [sic] harm, defamation of charcter [sic] by arguments not legally allowed to give. Loss of income, inability to gain and keep employment, mental trauma, instilled disbelief in justice in the legal system, familial traumam [sic] due to my legal battles." Id. Indicating the relief sought, plaintiff states

**\*4** Petitioner seeks reinstatement of driving priveldges [sic], and 10 million dollars for damages caused by conflict of interest, deliberate violation of Due Process, Speedy Trial rights, Ineffective assistance of counsel, malice, Brady Violation, Petitioner claims deliberate misconduct and malice in Montgomery County Court, the Saratoga Disrict Attorney's Office, and the Supreme Court Appellate Division Third department. \*\* This is subject to change if an attorney agrees to represent.

Compl. at 5. Although he typed his name, plaintiff does not sign the complaint where a signature is indicated. See id. at 8.

Plaintiff provides in his supplement that he "removed this action to district court asserting jurisdiction pursuant to 42 U.S.C. 1983, and § 1441." Dkt. No. 7. at 1. Plaintiff states that he removed this case from Montgomery County Supreme Court. See id. He states that he seeks or sought the removal because he was told he was "not guarantee counsel" at the state, but that "[i]n Federal Court, there is that option, pending qualification, and I am told, if a lawyer agrees to take it, then I really have something. I am in dire need of counsel." Id.

Plaintiff states, "[t]he ineffective assistance of counsel and The County Court are a matter already mentioned in the appeal." Dkt. No. 7 at 2. Plaintiff states that "[t]o get my conviction, I allege judicial and prosecutorial misconduct, and ineffective assistance of counsel × 4. That is why I am pro se. I had to protect myself when appointed counsel did not. It also went through a couple judges which is why they are mentioned in the preliminary complaint/paperwork, and why I mention bias." Id. Plaintiff states he can "prove each thing I saw not just with my words, but with transcripts [5] from the County Court, and the Adult Drug Court." Id. Plaintiff refers to being drug free for four and a half years and having academic success in college. Id. at 3. He states that he wishes this Court to hear his case because he believes he will not "see bias" in federal court "like I saw in others." Id. Plaintiff states that he "also put in a Notice of Removal in the Federal Court for those criminal charges that led to the Complaint. I do not trust the assigned appellate attorney. That case too has Constitutional violations. That case number is 1:24-CR-301 (AMN)." Id.

## C. Discussion [6]

### 1. Rule 8

As a threshold issue, plaintiff's complaint fails to meet the requirements of Rule 8. See FED. R. CIV. P. 8(a)(2). He does not provide a short and plain statement of the claim demonstrating why he is entitled to relief. Although he makes general references to both an Article 78 proceeding and a criminal proceeding and unexplained references to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel," he does not provide factual support or context. Thus, his complaint does not provide "fair notice" to defendants of the claims against them. See FED. R. CIV. P. 8(a)(2).

### 2. Heck v. Humphrey

However, there are several substantive concerns that further lead the undersigned to recommend dismissal. First, in referencing to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel" and explicitly referencing a criminal conviction, it is clear that plaintiff is attempting to seek some kind of review of a criminal proceeding or conviction. See Compl. at 3. Plaintiff also accuses all named judges of denying him due process and contends that an unnamed "ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me." Compl. at 4. Plaintiff also references a conviction. See Dkt. No. 7 at 4. Such claims would be barred by Heck v. Humphrey.

**\*5** As this Court, citing the District of Connecticut, has set forth:

In Heck, the Supreme Court held that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The court further held that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487 (emphasis in original).

[ ]

Thus, under Heck and its progeny, if a conviction has not been invalidated previously, a "§ 1983 action is barred ... no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Ali v. Shattuck, No. 8:24-CV-0128 (DNH/CFH), 2024 WL 2747619, at *3 (N.D.N.Y. May 29, 2024), report-recommendation adopted sub nom. Ali v. Dow, No. 8:24-CV-128, 2024 WL 3460745 (N.D.N.Y. July 18, 2024) (quoting Zografidis v. Richards,

No. 3:22-CV-00631 (AVC), 2022 WL 21756775, at *7 (D. Conn. July 6, 2022), report and recommendation adopted (Oct. 7, 2022), aff'd, No. 22-3197, 2023 WL 7538211 (2d Cir. Nov. 14, 2023)).

Plaintiff has failed to demonstrate that any criminal charge(s), conviction, or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Zografidis, 2022 WL 21756775, at *7. Although plaintiff's complaint wants for detail, the undersigned can clearly determine that plaintiff seeks review of his criminal proceedings, conviction, and/or sentence. The claims plaintiff seeks to pursue relate to allegations that he was denied due process, denied speedy trial rights, and experienced ineffective assistance of counsel. Accordingly, plaintiff's claims are barred by Heck unless and until he can demonstrate favorable termination of his criminal conviction. [7]

### 3. Immunities

Plaintiff names as defendants several defendants who are immune from suit. Insofar as plaintiff names Hon. Michael W. Smrtic, Interim Montgomery County Judge and Tatiana N. Coffinger, "County/Family/Surrogate's Court Judge"[8] such claims would be barred by judicial immunity.

**\*6** "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam)). "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.' " Id. (quoting Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." Id. (citation omitted); see Positano v. New York, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA).

"Judicial immunity is immunity from suit, not just immunity from the assessment of damages." Zavalidroga, 2017 WL 8777370, at *8 (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " Id. (quoting Mireles, 502 U.S. at 11-12). "In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.' " Pacherille v. Burns, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014) (quoting Ceparano v. Southampton Just. Ct., 404 F. App'x 537, 539 (2d Cir. 2011) (summary order)). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Ceparano, 404 F. App'x at 539 (internal quotation marks and citation omitted). "Further, if the judge is performing in his judicial capacity," he " 'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.' " Ceparano, 404 F. App'x at 539 (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.' " Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (quoting Mireles, 502 U.S. at 11).

Thus, as plaintiff names the judicial defendants in relation to actions or omissions that they took in their roles as judges, their actions are protected by absolute judicial immunity. To the extent plaintiff names Hon. Felix Catena, "Retired Administrative Law Judge," Judge Catena is also protected by absolute judicial immunity as a judge's retirement, "does not impact [his or] her immunity for acts taken in [his or] her official capacity before her retirement." McCray v. Lewis, No. 16-CV-3855 (WFK/VMS), 2016 WL 4579081, at *2 (E.D.N.Y. Aug. 31, 2016). To the extent plaintiff may seek to sue the judges their official

capacities, the suit is barred by the Eleventh Amendment. See Pacherille v. Burns, 30 F. Supp. 3d 159, 163 n.5 (N.D.N.Y. 2014) ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities.").

**\*7** In addition, plaintiff also references, exclusively in his "relief" section of the form complaint, "the Supreme Court Appellate Division, Third Department" when stating that he experienced "deliberate misconduct and malice." Compl. at 7. He does not name this Court as a defendant anywhere in the complaint. However, even if plaintiff were to have named the Appellate Division, Third Department as a defendant, such defendant would also need to be dismissed based on Eleventh Amendment immunity as the Appellate Division "is merely an agency or arm of New York State." Benyi v. New York, No. 3:20-CV-1463 (DNH/ML), 2021 WL 1406649, at *5 (N.D.N.Y. Mar. 23, 2021), report and recommendation adopted, No. 3:20-CV-1463, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citation omitted). Accordingly, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division as a defendant, such claims are barred by Eleventh Amendment immunity. See Compl.

Finally, insofar as plaintiff seeks to sue Prosecutor Samuel V. Maxwell, Esq., Assistant District Attorney, in addition to the Heck issues noted above, he would be protected by absolute prosecutorial immunity. As this Court has recently reiterated,

> Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities 'intimately associated with the judicial phase of the criminal process.' " Barr v. Abrams, 810 F.2d 358, 360-61 (2d Cir. 1987) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). This immunity encompasses "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations and citation omitted). Absolute immunity applies when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, "involves the exercise of discretion." Flagler v. Trainor, 663 F.3d 543, 547 (2d Cir. 2011) (citing Kalina v. Fletcher, 522 U.S. 118, 127 (1997)).

> Accordingly, absolute immunity extends to functions such as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013) (citing Imbler, 424 U.S. at 431 n.33); see also Flagler, 663 F.3d at 547 (explaining, "the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case ... [but] withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness."). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused ...." Bernard v. Cnty. of Suffolk, 356 F.3d 495, 503 (2d Cir. 2004) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)).

Williams v. Atkins, No. 5:24-CV-0573 (DNH/TWD), 2024 WL 3649849, at *5 (N.D.N.Y. June 11, 2024), report and recommendation adopted, No. 5:24-CV-573, 2024 WL 3548760 (N.D.N.Y. July 26, 2024).

Plaintiff appears to suggest that Mr. Maxwell "withheld potentially exculpatory material" that was used against him. Compl. at 4. Beyond the Heck barriers already discussed, even if plaintiff could amend to provide greater detail, absolute immunity would extent to even this alleged misconduct as such allegations clearly fall within the scope of prosecutorial immunity. Accordingly, it is recommended that any claims against ADA Samuel V. Maxwell be dismissed for absolute prosecutorial immunity. "Furthermore, because the District Attorney's prosecutorial immunity is substantive and not something that can be corrected by a better pleading, I recommend that the dismissal be with prejudice." Phillips v. New York, No. 5:13-CV-927, 2013 WL 5703629, at *5 (N.D.N.Y. Oct. 17, 2013) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 223 (2d Cir. 2000)). [9]

### III. Conclusion

**\*8** It is **ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be **GRANTED**; and it is

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**RECOMMENDED**, that plaintiff's section 1983 claims against Honorable Michael W. Smrtic; Tatiana N. Coffinger, County/Family/Surrogate's Court Judge; and Felix Catena, Retired Administrative Law Judge (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** as follows: (1) claims brought against them in their personal/individual capacities for judicial immunity, and (2) claims brought against them in their official capacities for Eleventh Amendment immunity; and it is further

**RECOMMENDED**, that plaintiff's section 1983 claims against Assistant District Attorney Samuel V. Maxwell (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** due to absolute prosecutorial immunity; and it is further

**RECOMMENDED**, that, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division, Third Department, as a defendant (Dkt. Nos. 1, 7), such claims be **DISMISSED WITH PREJUDICE** as barred by Eleventh Amendment immunity, and it is

**RECOMMENDED**, that plaintiff's pro se motion for permission to file electronically (dkt. no. 4) and motion to appoint counsel [10] (dkt. no. 5) be **DISMISSED AS MOOT** based on the above recommendations, and it is

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties have
**FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [11]

**All Citations**

Slip Copy, 2024 WL 4870495

---

**Footnotes**

1    The submission includes a letter addressed to District Judge D'Agostino, titled, "Requirements for Cases Removed From State Court," Dkt. No. 7; a receipt from Montgomery County Clerk dated December 8, 2022; and a "Notice of Claim" with the caption of Cole v. County of Montgomery, dated December 7, 2022. See Dkt. No. 7. The undersigned has reviewed this submission in connection with the initial review of plaintiff's complaint. See Sira v. Morton, 380 F. 3d 57, 67 (2d Cir. 2004).

2    Plaintiff is advised that, although he has been granted IFP status, he is still required to pay all fees and costs he may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

3    Any unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

Although plaintiff generally references ineffective assistance of counsel, Compl. at 4, he does not name any attorney who may have represented him. Any claims against the prosecutor would not be considered ineffective assistance of counsel because Mr. Maxwell, as the prosecutor, was not plaintiff's attorney.

Plaintiff did not provide any transcripts.

As a courtesy, the Court has provided plaintiff with copies of any unpublished cases cited within this Report-Recommendation & Order.

The undersigned recognizes that claims that are determined to be barred by Heck are dismissed without prejudice. However, the undersigned has recommended dismissal with prejudice because plaintiff has only named defendants who are immune from relief. Accordingly, the undersigned is recommending dismissal of the claims based on these immunities, rather than a Heck dismissal. The undersigned has included the Heck review for sake of completeness.

Although plaintiff provides no facts regarding any family court proceedings, that he named a family court judge and makes general reference to that he seeks review over actions taken by a family court judge. Even if plaintiff were to amend his complaint to provide facts about any possible family court proceedings and details about any alleged violations of his rights that he believes he faced in that Court, if plaintiff seeks this Court's review of an order of the family court, such review would be barred by Rooker-Feldman, and if plaintiff seeks this Court's review or intervention of a currently pending/ongoing Family Court proceeding, such review would be barred by Younger. See Porter v. Nasci, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citations omitted), report and recommendation adopted, 2024 WL 3158645 (N.D.N.Y. June 25, 2024) ("Under the Rooker-Feldman doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."); see also Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) ("[F]ederal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.").

Plaintiff appears to characterize his submissions as a purported removal to federal court or suggests that he seeks to remove his case from Montgomery County Court to this Court. See Dkt. No. 7 (citing 28 U.S.C. § 1441). However, in addition to the infirmities mentioned above, plaintiff has not demonstrated that any proceeding related to this complaint has been properly removed to, or is subject to removal to, this Court. See, e.g., 28 U.S.C. § 1446. Indeed, plaintiff's submissions appear to indicate that plaintiff is the plaintiff in the County Court action. See id. § 1446(a).

The undersigned also notes that plaintiff did not contend that he made any efforts to obtain counsel on his own, show proof of any attorneys he contacted. See Terminate Control Corp v. Horowitz, 28 F.3d 1335 (2d Cir. 1994). See Dkt. No. 5.

If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

1999 WL 1288943
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Theodore KING and Aniello Madonna, Trustees of Local 282 International Brotherhood
of Teamsters Welfare, Pension, Annuity, and Job Training Trust Funds, Plaintiffs,

v.

ATLAS TRANSIT MIX CORP., Defendant.
Johnnie BROWN, Aniello Madonna, Aldo Colussi, George Finch, Chester Broman, Joseph
Ferrara, Frank Finkel, and Theodore King, as Trustees and Fiduciaries of the Local 282
Welfare, Pension, Annuity Job Training, and Vacation and Sick Leave Trust Funds, Plaintiffs,

v.

ARMOR TITE CORP. and Atlas Transit Mix Corp., Defendants.

Nos. 95 CV 1098, 95 CV 1511.
|
Oct. 22, 1999.

**Attorneys and Law Firms**

Mary M. Dickman, Friedman & Levine, New York, NY, for plaintiffs.

Avram H. Schreiber, New York, NY, for plaintiffs.

Luigi P. De Maio, Jackson & Nash, LLP, New York, NY, for Atlas Transit Mix Corp.

Jeffrey D. Pollack, Horowitz & Pollack, P.C., South Orange, NJ, for Atlas Transit Mix Corp.

MEMORANDUM AND ORDER

NICKERSON, J.

**\*1** Plaintiffs, trustees and fiduciaries of the Local 282 Welfare, Pension, Annuity, Job Training, and Vacation and Sick Leave Trust Funds (the "Funds"), brought this consolidated action against defendant-employer Atlas Transit Mix Corp. ("Atlas") for delinquent contributions to an employee benefit plan and the posting of a surety bond under a collective bargaining agreement. Plaintiffs move for partial summary judgment.

I

The basic facts are not in dispute. Atlas, as part of a multi-employer bargaining group (the "Association"), signed a collective bargaining agreement with Building Material Teamsters, Local 282 ("Local 282"), effective from July 1, 1990 through June 30, 1993 (the "1990–93 Agreement"). In relevant part, the 1990–93 Agreement required each employer in the Association to contribute to employee benefit plans administered by the Funds and to post a surety bond to guarantee payment of the contributions.

In 1993, the Association began negotiations with Local 282 for a successor agreement. Difficulties ensued, and on July 20, 1993 the employees represented by Local 282 went on strike. Subsequently, Atlas withdrew from the Association on August

26, 1993, claiming that they were not receiving fair representation and that they had reached an impasse. Thereafter, Atlas attempted to negotiate individually with Local 282 but could not reach agreement. Atlas discontinued making payments to the Funds after the 1990–93 Agreement expired.

On August 31, 1993, the Association signed a successor agreement with Local 282 ("1993–96 Agreement"), effective from July 1, 1993 through June 30, 1996, agreeing to virtually the same employee benefit plan and surety bond requirements as the 1990–93 Agreement.

Atlas claimed the 1993–96 Agreement had no binding effect on it because it withdrew from the Association before they executed the 1993–96 Agreement. Local 282 disagreed and filed an unfair labor practice charge with the National Labor Relations Board (the "Board"), claiming that Atlas withdrew illegally and was therefore bound by the 1993–96 Agreement.

After a hearing, Administrative Law Judge Steven Fish issued an order on September 19, 1994 finding that Atlas engaged in unfair labor practices in violation of the National Labor Relations Act sections 8(a)(1), (3) and (5), because, among other things, Atlas could not "justify its untimely withdrawal from bargaining." Judge Fish's order recommended that Atlas "honor and abide by the terms of the [1993–96 Agreement]," including "all contributions to [Local 282's] benefit funds."

In response to Atlas's request to reopen the record because of new evidence, Judge Fish issued a supplemental decision on September 9, 1996 reaffirming his earlier decision. Atlas filed with the Board exceptions to both of Judge Fish's decisions. On June 30, 1997, the Board affirmed those decisions ("Board Order").

The Funds filed two actions against Atlas and other members of the Association in 1995 for delinquent contributions and the posting of a surety bond under the 1993–96 Agreement. The proceedings were stayed pending the outcome of the Board's decision and later the actions were consolidated in this Court. Atlas is the only remaining defendant.

II

**\*2** Atlas argues that according to 29 U.S.C. § 160 the action should be dismissed because only the Courts of Appeals have subject matter jurisdiction to order compliance with the Board Order. Section 160(e) provides that "The Board shall have power to petition any court of appeals ... or if all the courts of appeals to which application may be made are in vacation, any district court ..., for the enforcement of [a Board] order." Section 160(f) provides that "Any person aggrieved by a final order of the Board ... may obtain a review of such order in any United States court of appeals...." Plainly, jurisdiction for the enforcement of a Board order and to hear any appeal therefrom resides only with the Courts of Appeals.

But a district court also has jurisdiction to hear certain labor disputes under 29 U.S.C. § 1132, 29 U.S.C. § 1145, and 29 U.S.C. § 185. Section 1132(e) provides that "the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by ... [a] fiduciary...." The specific violation is of § 1145, which provides that "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall ... make such contributions in accordance with the terms and conditions of such plan or such agreement." Section 185 provides that "Suits for violation of contracts between an employer and a labor organization ... may be brought in any district court." 29 U.S.C. § 185(a).

The language of § 1145 requires that an employer, in order to violate this provision, must have a contractual obligation to make contributions to a plan or collectively bargained agreement. *See Laborers Health and Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Co.,* 484 U.S. 539, 545–548, 108 S.Ct. 830, 834–836 (1988). By definition, the contractual obligation does not include post-contractual obligations imposed by the National Labor Relations Act, such as the employer's duty to bargain in good faith or to maintain status quo benefit payments. *See United Automobile, Aerospace and Agricultural Implement Workers of America, Local 33 v. R.E. Dietz Co.,* 996 F.2d 592, 597 (2d 1993); *Smith v. Candler Coffee*

*Corp.,* No. 95 Civ. 10956, 1996 WL 434554, at [*]2 (S.D.N.Y. Aug. 2, 1996). But the contractual obligation can consist of an implied promise to contribute. *See Brown v. C. Volante Corp.,* No. 99–7109, 1999 WL 807724, at [*]2 (2d Cir.1999).

The Funds have not offered any satisfactory evidence to show that Atlas intended to agree to the 1993–96 Agreement. Atlas ended payments to the Funds after the 1990–93 Agreement expired, made clear that it did not agree with the 1993–96 Agreement, and never signed the 1993–96 Agreement. One cannot imply from these facts.

The Funds cite *Benson v. Brower's Moving & Storage, Inc.,* 907 F.2d 310, 316 (2d Cir.1990), and argue that this Court need not wait for the Court of Appeals to hear an enforcement request or appeal. *Benson* does not apply. That case involved an employer's delinquent contributions under a signed and facially valid agreement. *Id.* at 313. In this case, there is no showing that Atlas intended to promise any contributions under the 1993–96 Agreement or any other agreement.

**\*3** Section 185 similarly does not provide jurisdiction because "it has no application in the absence of a currently effective collective bargaining agreement." *Dietz,* 996 F.2d at 595.

This action will be dismissed.

### III

Plaintiffs' motion for partial summary judgment is denied. The consolidated action is dismissed for lack of subject matter jurisdiction.

So ordered.

**All Citations**

Not Reported in F.Supp.2d, 1999 WL 1288943

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 1291533

2025 WL 1291533
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Scott LESSON, Plaintiff,
v.
Jane DOE / State Trooper, Defendant.

1:25-cv-00188 (AMN/TWD)
|
Signed May 5, 2025

**Attorneys and Law Firms**

SCOTT LESSON, Saratoga County Jail, 6010 County Farm Road, Ballston Spa, New York 12020, Plaintiff, pro se.

**ORDER**

Anne M. Nardacci, United States District Judge:

**I. INTRODUCTION**

**\*1** On February 10, 2025, *pro se* plaintiff Scott Lesson ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against an unknown New York State Trooper. Dkt. No. 1 ("Complaint"). Plaintiff sought and was granted leave to proceed *in forma pauperis.* Dkt. Nos. 4, 6.

This matter was referred to United States Magistrate Judge Thérèse Wiley Dancks, who reviewed the Complaint pursuant to 28 U.S.C. § 1915(e) and, on March 26, 2025, recommended that the Complaint be dismissed with leave to amend. Dkt. No. 6 ("Report-Recommendation"). Magistrate Judge Dancks advised that pursuant to 28 U.S.C. § 636(b)(1), the parties had fourteen days within which to file written objections and that failure to object to the Report-Recommendation within fourteen days would preclude appellate review. *Id.* at 7-8. [1] No party has filed objections to the Report-Recommendation and the time for filing objections has expired.

For the reasons set forth below, the Court adopts the Report-Recommendation in its entirety.

**II. STANDARD OF REVIEW**

This Court reviews *de novo* those portions of a magistrate judge's report-recommendation that have been properly preserved with a specific objection. 28 U.S.C. § 636(b)(1)(C). "To be 'specific,' the objection must, with particularity, 'identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection.' " *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012) (alteration in original) (quoting N.D.N.Y. Local Rule 72.1(c)). If no specific objections have been filed, this Court reviews a magistrate judge's report-recommendation for clear error. *See Petersen*, 2 F. Supp. 3d at 229 (citing Fed. R. Civ. P. 72(b) advisory committee's notes to 1983 addition). Similarly, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [previously] presented to the magistrate judge," the district court reviews a magistrate judge's report-recommendations for clear error. *O'Diah v. Mawhir*, No. 08-cv-322, 2011 WL 933846, at *1 (N.D.N.Y. Mar. 16, 2011) (citations omitted); *accord Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (a "statement, devoid of any reference to specific findings or recommendations to which [the plaintiff] objected and why, and unsupported by legal authority, was not sufficient to preserve" a claim); *Petersen*, 2 F. Supp. 3d at 228-29 & n.6 (collecting cases). "When performing such a 'clear error' review, 'the court need only satisfy itself

2025 WL 1291533

that there is no clear error on the face of the record in order to accept the recommendation.' " *Dezarea W. v. Comm'r of Soc. Sec.*, No. 21-cv-01138, 2023 WL 2552452, at *1 (N.D.N.Y. Mar. 17, 2023) (quoting *Canady v. Comm'r of Soc. Sec.*, No. 17-cv-0367, 2017 WL 5484663, at *1 n.1 (N.D.N.Y. Nov. 14, 2017)).

 **\*2** "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted). The Second Circuit has held that courts are obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). That said, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal ...." *Machicote v. Ercole*, No. 06-cv-13320, 2011 WL 3809920, at *2, (S.D.N.Y. Aug. 25, 2011) (citation omitted); *accord Caldwell v. Petros*, No. 22-cv-567, 2022 WL 16918287, at *1 (N.D.N.Y. Nov. 14, 2022). After appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. DISCUSSION

Because no party has filed any objections to the Report-Recommendation, the Court reviews the Report-Recommendation for clear error.

Magistrate Judge Dancks determined that Plaintiff's allegations failed to set forth a claim for excessive force, as Plaintiff did not identify what force the unidentified state trooper purportedly used against him, nor how it was excessive. Dkt. No. 6 at 5-6. Magistrate Judge Dancks also found that Plaintiff's allegations failed to comply with the pleading requirements set forth in the Federal Rules of Civil Procedure. *Id.* at 4-5. As a result, Magistrate Judge Dancks recommended that the Complaint be dismissed with leave to amend. *Id.* at 6-7. The Court agrees with Magistrate Judge Dancks' findings and recommendations for the reasons set forth in the Report-Recommendation. Having reviewed the Report-Recommendation for clear error, and found none, the Court adopts the Report-Recommendation in its entirety.

## IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation, Dkt. No. 6, is **ADOPTED** in its entirety; and the Court further

**ORDERS** that the Complaint, Dkt. No. 1, is **DISMISSED with leave to amend**;[2] and the Court further

**ORDERS** that any amended complaint must be filed within **thirty (30) days** of the filing date of this Order; and the Court further

**ORDERS** that, if Plaintiffs file a timely amended complaint, it shall be referred to Magistrate Judge Dancks for review; and if Plaintiff fails to file a timely amended complaint, the Clerk is directed to close this case without further order of this Court; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on all parties in accordance with the Local Rules.[3]

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 1291533

2025 WL 1291533

## Footnotes

1       Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

2       As set forth in the Report-Recommendation, any amended pleading must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Dkt. No. 5 at 6–7.

3       The Clerk shall also provide Plaintiff, at both his address of record and the future address he provided, Dkt. No. 2, with copies of all unreported decisions herein.

**End of Document**                                  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

831 Fed.Appx. 46 (Mem)
This case was not selected for publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals, Second Circuit.

Robert PILCHMAN, Plaintiff-Appellant,

v.

NATIONAL LABOR RELATIONS BOARD, New York State Public Employment Relations Board, New York State Divison of Human Rights, Brooklyn Public Library, Brooklyn Library Guild Local 1482 of the American Federation of State, County and Municipal Employees, AFL-CIO, District Council 37 of the American Federation of State, County and Municipal Employees, AFL-CIO, Defendants-Appellees.

17-1697(L)
|
20-52(con)
|
20-66(con)
|
December 18, 2020

Appeal from the United States District Court for the Eastern District of New York (Townes, *J.*, Kuntz, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of said District Court be and it hereby is **AFFIRMED**.

**Attorneys and Law Firms**

Appearing for Appellant: Robert Pilchman, pro se, Brooklyn, N.Y.

Appearing for Appellee National Labor Relations Board: Kevin P. Flanagan, Dalford Dean Owens, Jr., Peter B. Robb, Alice B. Stock, Nancy E. Kessler Platt, William G. Mascioli, National Labor Relations Board, Washington, D.C.

Appearing for Appellee New York State Public Employment Relations Board and New York State Division of Human Rights: Barbara D. Underwood, Solicitor General, Judith N. Vale, Senior Assistant Solicitor General, Amit R. Vora, Assistant Solicitor General, for Letitia James, Attorney General State of New York, New York, N.Y.

Appearing for Appellee Brooklyn Public Library: Clifford R. Atlas, Daniel D. Schudroff, Katherine Kettle Di Prisco, Jackson Lewis P.C., New York, N.Y.

Appearing for Appellee Brooklyn Library Guild Local 1482 of the American Federation of State, County and Municipal Employees, AFL-CIO and District Council of State, County and Municipal Employees, AFL-CIO: Robin Roach, Steven Edward Sykes, District Council 37, AFSCME, AFL-CIO, New York, N.Y.

Present: DENNIS JACOBS, ROSEMARY S. POOLER, JOSEPH F. BIANCO, Circuit Judges.

Case 5:26-cv-00252-MAD-MJK    Document 5    Filed 04/02/26    Page 35 of 47

**\*47  SUMMARY ORDER**

Robert Pilchman appeals from the dismissal of his complaints against the National Labor Relations Board ("NLRB"), the New York State Public Employment Relations Board ("PERB"), the New York State Division of Human Rights, his former employer the Brooklyn Public Library ("Library"), and his union. In his first action, Pilchman alleged that the general counsel of the NLRB improperly declined to issue an unfair labor practice complaint, and the PERB improperly denied his application for injunctive relief against the Library. *Pilchman v. National Labor Relations Board,* 14-cv-7083 (E.D.N.Y.) ("*Pilchman I*"). In the second, he reiterated his claims and further alleged that the defendants had not complied with his Freedom of Information Act and New York's Freedom of Information Law requests. *Pilchman v. National Labor Relations Board,* 15-cv-3176 (E.D.N.Y.) ("*Pilchman II*"). In the third, he sued only the Library and alleged that the library had violated his First Amendment rights. *Pilchman v. Brooklyn Public Library*, E.D.N.Y. 15-cv-3641 ("*Pilchman III*"). The district court dismissed the first action, reasoning that it lacked jurisdiction to review a decision of the NLRB general counsel not to issue an unfair labor practice complaint and declining to exercise supplementary jurisdiction over his remaining state law claims. The court dismissed the second and third actions for failure to state a claim. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

The issue underlying the district court's dismissals of *Pilchman I* and *II* is whether the district court had jurisdiction to review a decision of the NLRB general counsel not to issue an unfair labor practice complaint. The district court did not have such jurisdiction.

The district court had jurisdiction "only if authorized by statute." *Bell v. New Jersey*, 461 U.S. 773, 777, 103 S.Ct. 2187, 76 L.Ed.2d 312 (1983). Typically, federal court review of agency decisions is governed by the Administrative Procedure Act, unless some other statute "preclude[s] judicial review." 5 U.S.C. § 701(a)(1). The Supreme Court has held that the National Labor Relations Act is such a statute. *See N.L.R.B. v. United Food and Commercial Workers Union, Local 23, AFL-CIO*, 484 U.S. 112, 130–33, 108 S.Ct. 413, 98 L.Ed.2d 429 (1987). The NLRA provides that "[a]ny person aggrieved by a final order of the Board ... may obtain a review of such order in any United States *court of appeals* in the circuit wherein the unfair labor practice in question was alleged to have been engaged in ... by filing in such a court a written petition praying that the order of the Board be modified or set aside." 29 U.S.C. § 160(f) (emphasis added).

Thus, the NLRA does not provide for district court jurisdiction to review NLRB decisions. This Court lacks jurisdiction over the general counsel's decision because it is not a final order within the meaning of 29 U.S.C. § 160(f); *see United Food and Commercial Workers Union Local 23*, 484 U.S. at 129, 108 S.Ct. 413. While we have recognized a potential exception when there is an assertion of a violation of constitutional rights which is "not transparently frivolous." *Fay v. Douds*, 172 F.2d 720, 723 (2d Cir. 1949), Pilchman does not allege any constitutional violations by the NLRB. Accordingly, the district court lacked jurisdiction to review the NLRB general counsel's decision and was required to dismiss Pilchman's claim against the NLRB. Because Pilchman's claim  **\*48**  against the NLRB was the only federal claim in his first action, the district court properly declined to exercise supplemental jurisdiction over his claims against the remaining defendants. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006).

We have considered the remainder of Pilchman's arguments and find them to be without merit. Accordingly, the order of the district court hereby is AFFIRMED.

**All Citations**

831 Fed.Appx. 46 (Mem)

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:26-cv-00252-MAD-MJK    Document 5    Filed 04/02/26    Page 36 of 47

Santiago v. Annucci, Not Reported in Fed. Supp. (2021)

2021 WL 4392487
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Heraclio SANTIAGO, Plaintiff,
v.
Anthony ANNUCCI, et al., Defendants.

No. 20-CV-4530 (KMK)
|
Signed 09/24/2021

**Attorneys and Law Firms**

Heraclio Santiago, Brooklyn, NY, Pro se Plaintiff

Bruce J. Turkle, Esq., State of New York Office of the Attorney General, New York, NY, Counsel for Defendants

OPINION & ORDER

KENNETH M. KARAS, District Judge:

 ***1**  Pro se Plaintiff Heraclio Santiago ("Plaintiff") brings the instant Complaint, pursuant to 42 U.S.C. § 1983, against Acting Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS") Anthony Annucci ("Annucci" or "Commissioner"), Fishkill Correctional Facility Superintendent Leroy Fields ("Fields"), and "Bureau Chief" Derek Jones ("Jones") (collectively, "Defendants"). (Compl. 2 (Dkt. No. 2).) Before the Court is Defendants' Motion To Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Motion"). (*See* Not. of Mot. (Dkt. No. 21).) For the reasons discussed below, the Motion is granted.

I. Background

 A. Factual Background

The pertinent facts, drawn from Plaintiff's Complaint and taken as true for purposes of resolving the instant Motion, are as follows. In February 2019, Plaintiff, formerly an inmate at Fishkill Correctional Facility, was released on parole. (Compl. 3.) Because Plaintiff was convicted of unlawful imprisonment in the first degree, he was forbidden from living within 1,000 feet of any school. (*Id.*) Plaintiff's case had no "sexual component," and Plaintiff does not have a "history of sex in [his] record." (*Id.*)[1] Plaintiff alleges that Defendant Fields held him past his conditional release date, which was April 29, 2020, evidently because of a delay in finding housing that complied with the New York Sexual Assault Reform Act ("SARA"). (*Id.*) Plaintiff alleges that as a result of Defendants' actions, he suffered "mental anguish" and "hung up in [his] cell." (*Id.*) Plaintiff seeks a preliminary injunction removing him from the "registry [of] sex offender[s]" and enjoining Defendants from "subjecting [him] to [the] provision[s] applicable to sex offender[s] under [the Sexual Offender Reform Act ("SORA")] or the mandatory parole condition prescribed for sex offender[s]." (*Id.* at 5.) Plaintiff also seeks damages of $270 per day for "[18] months of hold and [$]200,000.00 for pain and suffering [and] mental anguish." (*Id.*)[2]

 B. Procedural History

Case 5:26-cv-00252-MAD-MJK    Document 5    Filed 04/02/26    Page 37 of 47

Santiago v. Annucci, Not Reported in Fed. Supp. (2021)

Plaintiff filed his Complaint on June 11, 2020, naming DOCCS, Fields, and Jones as Defendants. (Dkt. No. 2.) Plaintiff was granted in forma pauperis ("IFP") status on July 27, 2020. (Dkt. No. 4.) On August 5, 2020, "in light of Plaintiff's pro se status and clear intention to seek injunctive relief from the Acting Commissioner of DOCCS," the Court "construe[d] the [C]omplaint as asserting claims against Annucci" and therefore substituted Annucci for DOCCS as a Defendant in this case. (Order of Serv. 2 (Dkt. No. 6).) [3] On August 20, 2020, Plaintiff filed a letter notifying the Court that "there [was] an error on the name of [the] Bureau Chief" named in the Complaint." (Dkt. No. 8.) Plaintiff stated that he (Plaintiff) was "in Brooklyn[,] not the Bronx." (*Id.*) Though Plaintiff did not know who the bureau chief in Brooklyn was, he asked that "this be fixed." (*Id.*) [4] On November 18, 2020, counsel for Defendant Annucci requested a 45-day extension of time to respond to the Complaint, the reason being that neither Fields nor Jones had been served with the Complaint. (Dkt. No. 10.) The Court granted the request. (Dkt. No. 12.) On January 7, 2021, counsel for Defendant Annucci filed a pre-motion letter regarding Annucci's proposed motion to dismiss the Complaint. (Dkt. No. 14.) By Memo Endorsement entered January 20, 2021, the Court adopted a briefing schedule for Annucci's motion. (Dkt. No. 15.) On February 9, 2021, counsel for Annucci, now also representing Defendants Fields and Jones, filed a supplemental pre-motion letter requesting that Fields and Jones be granted leave to join in Annucci's Motion To Dismiss. (Dkt. No. 19.) The Court granted the request on the same day. (Dkt. No. 20.)

**\*2** Pursuant to the Court's briefing schedule, Defendants filed the instant Motion and supporting papers on February 19, 2021. (*See* Not. of Mot.; Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 22).) On March 12, 2021, counsel for Defendants filed a letter informing the Court that although Plaintiff had not updated his address on the docket, he had in fact been released from Fishkill Correctional Facility on February 9, 2021. (Dkt. No. 25.) Defense counsel noted that he had mailed a courtesy copy of Defendants' motion papers to Plaintiff's last known address. (*Id.*) However, in view of Plaintiff's pro se status, and the possibility that Plaintiff's failure to update his address had delayed receipt of Defendants' motion, Defense counsel suggested that the Court order Plaintiff to update his address on the docket and extend his time to oppose the Motion. (*Id.*) On March 19, 2021, Plaintiff updated his address on the docket. (Dkt. No. 26.) On March 22, 2021, counsel for Defendants notified the Court that he had mailed a courtesy copy of Defendants' motion papers to Plaintiff at his new address, and again suggested that the Court consider adjusting the briefing schedule to provide Plaintiff additional time to oppose the Motion. (Dkt. No. 27.) By Memo Endorsement entered April 7, 2021, the Court gave Plaintiff until April 30, 2021 to file an Opposition to the Motion, and gave Defendants until May 14, 2021 to file a Reply. (Dkt. No. 28.) Plaintiff never filed his opposition papers. (*See* Dkt.)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:26-cv-00252-MAD-MJK    Document 5    Filed 04/02/26    Page 38 of 47

Santiago v. Annucci, Not Reported in Fed. Supp. (2021)

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same). However, when the complaint is from a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (citation and quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), "documents either in [the] plaintiff[']s possession or of which [the] plaintiff[ ] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted), and "his opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997).

**\*3** Where, as here, a plaintiff proceeds pro se, the court must "construe[ ] [his] [complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (citation and italics omitted)).

### B. Analysis

Though Plaintiff has not identified the particular Constitutional provisions under which his claims arise, the Court construes the Complaint to assert claims for violations of Plaintiff's Fourteenth Amendment due process rights and Eighth Amendment right to be free from cruel and unusual punishment. The Court also assumes that Plaintiff intends to sue Defendants in both their individual capacities (with respect to Plaintiff's claim for damages) and their official capacities (with respect to Plaintiff's claim for injunctive relief). [5] Defendants seek to dismiss the Complaint on multiple grounds, arguing that Plaintiff's Action is barred by the doctrine articulated in *Heck v. Humphrey*, 512 U.S. 477 (1994); that the Complaint contains no substantive allegations against Jones and fails to allege the personal involvement of Fields; that the Complaint fails to plead a procedural due process or Eighth Amendment violation; and that Defendants are entitled to qualified immunity. (*See generally* Defs.' Mem.) The Court will consider these arguments as necessary to resolve the instant Motion.

### 1. Procedural Due Process

**\*4** Pursuant to the Due Process Clause of the Fourteenth Amendment, "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV; *see also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (holding that a procedural due process violation arises under the Fourteenth Amendment when a plaintiff has been deprived of a constitutionally protected interest in life, liberty, or property without due process of law). The Due Process Clause protects "the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *see also Zherka v. Ryan*, 52 F. Supp. 3d 571, 582 (S.D.N.Y. 2014) (same). To state a procedural due process claim, a plaintiff "must first establish that he enjoyed a protected liberty interest." *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998). If a plaintiff establishes such a protected interest, the next question is whether "the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

Case 5:26-cv-00252-MAD-MJK     Document 5     Filed 04/02/26     Page 39 of 47

Santiago v. Annucci, Not Reported in Fed. Supp. (2021)

It is an open question in the Second Circuit whether a prisoner has a liberty interest in his or her conditional release from prison. *See Doe v. Simon*, 221 F.3d 137, 139 (2d Cir. 2000) (refusing to "reach the thorny question of whether a liberty interest exist[s]" in conditional release); *see also Hayes v. Annucci*, No. 14-CV-8845, 2016 WL 1746109, at *3 (S.D.N.Y. Apr. 29, 2016) ("[T]he Second Circuit has declined to opine on whether New York recognizes a liberty interest in conditional release."); *Muhammad v. Evans*, No. 11-CV-2113, 2014 WL 4232496, at *7 (S.D.N.Y. Aug. 15, 2014) (same); *Ahlers v. Boruch*, No. 04-CV-1747, 2007 WL 2042794, at *7 (E.D.N.Y. July 16, 2007) (same). But even if Plaintiff had adequately alleged sufficient facts to establish such a liberty interest, Plaintiff has failed to allege that he did not receive the minimum process due under the circumstances. *Cf. Doe*, 221 F.3d at 139 ("[E]ven if [a liberty interest] did [exist], [the plaintiff] received sufficient process to satisfy his constitutional rights."); *D'Angelo v. Annucci*, No. 16-CV-6459, 2017 WL 6514692, at *8–9 (S.D.N.Y. Dec. 19, 2017) (assuming without deciding that the plaintiff had adequately alleged a liberty interest in his conditional release from prison, but finding that he had failed adequately to allege that the State procedures were constitutionally insufficient). "It is undisputed that under New York law the Board of Parole is entitled to impose conditions on the conditional release of an inmate such as [Plaintiff]." *Doe*, 221 F.3d at 139. In *Doe*, the Second Circuit held that the "minimum" due process owed to an inmate with an approved housing condition as part of his conditional release requires "notice that [the inmate] would not be released without an approved residence, an explanation of why this special condition was being imposed, and an opportunity to dispute the grounds for application of the special condition." *Id.* at 140. The Complaint does not allege that Plaintiff was deprived of these minimum procedural requirements. (*See generally* Compl.) All that is clear from the brief, cursory allegations in the Complaint is that Plaintiff disagrees with one of the conditions of his release, namely that he live in SARA-compliant housing. (*See id.* at 3.) "Plaintiff's claim, then, is a challenge to the mere fact of his confinement beyond his conditional release date, and is devoid of any allegations regarding specific deficiencies in the process he was afforded." *D'Angelo*, 2020 WL 777907, at *9 (dismissing plaintiff's procedural due process claim where the plaintiff "[did] not allege that he received insufficient notice that an approved, SARA compliant residence would be required for his release"); *see also Velazquez v. Gerbing*, No. 18-CV-8800, 2020 WL 777907, at *9–10 (S.D.N.Y. Feb. 18, 2020) (holding that the plaintiff failed to state a procedural due process claim where he was aware that his release was conditioned on the parole board's approval of SARA-compliant housing and had been given a meaningful opportunity to advocate for his proposed residence). Thus, Defendants are entitled to dismissal of Plaintiff's due process claim on the ground that he has failed to state a claim.

 **\*5**  Plaintiff's failure to allege the personal involvement of any Defendant also provides an additional, independent basis to dismiss his procedural due process claim. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (italics omitted). In other words, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Here, the sole allegation against Fields is Plaintiff's assertion that "Superintendent Fields of Fishkill Correctional Facility is holding [him] past [his] [conditional release]." (Compl. 3.) There are no allegations with respect to Jones or Annucci, the latter of whom was substituted as a Defendant for DOCCS. (*See* Compl.; Order of Serv.) As discussed, Plaintiff fails to identify any alleged violation of procedural due process requirements to begin with, let alone allege that Defendants were *personally involved* in such a violation. Plaintiff does not allege, for example, that any Defendant personally prevented him from receiving "notice that he would not be released without an approved residence, an explanation of why this special condition was being imposed, and an opportunity to dispute the grounds for application of the special condition." *Doe*, 221 F.3d at 140; *cf. Joseph v. Cuomo*, No. 20-CV-3957, 2021 WL 200984, at *6 (E.D.N.Y. Jan. 20, 2021) (finding that plaintiff adequately pled that a parole officer was personally involved in depriving him of an opportunity to advocate for SARA-compliant housing where the parole officer allegedly "provided misleading information, did not attempt to verify [the] [p]laintiff's proposals for [SARA-]compliant residences, and summarily denied each address [the] [p]laintiff submitted"). Plaintiff appears to name Fields as a Defendant solely because he serves as superintendent of the facility in which he was being held. (*See* Compl. 3.) Annucci, likewise, was substituted for DOCCS by virtue of his role as the Acting Commissioner of that organization. (*See* Order of Serv.) But as the Second Circuit recently made clear in *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), "there is no special rule for supervisory liability," *id.* at 618. "Whatever the alleged constitutional violation, after *Tangreti*, '[t]he violation must be established against

Case 5:26-cv-00252-MAD-MJK    Document 5    Filed 04/02/26    Page 40 of 47

Santiago v. Annucci, Not Reported in Fed. Supp. (2021)

the supervisory official directly.' " *Falls v. Pitt*, No. 16-CV-8863, 2021 WL 1164185, at \*32 (S.D.N.Y. Mar. 26, 2021) (alteration in original) (quoting *Tangreti*, 983 F.3d at 618). Plaintiff's failure to explain how any one of the three Defendants was personally involved in the alleged constitutional violation requires that the procedural due process claim be dismissed. *See Joseph*, 2021 WL 200984, at \*8 ("Because the [c]omplaint does not contain specific factual allegations as to how [a particular defendant] personally contributed to [the] [p]laintiff['s] receiving insufficient procedures for his housing placement, the [c]ourt cannot infer that [that defendant] was personally involved for the purposes of § 1983 liability."); *Velazquez*, 2020 WL 777907, at \*7 (dismissing § 1983 claims against the acting commissioner of DOCCS and the chairperson of the New York State Board of Parole where the complaint failed adequately to allege that these officials were personally involved in detaining the plaintiff past his open parole date based on a delay in finding SARA-compliant housing); *D'Angelo*, 2017 WL 6514692, at \*4–5 (dismissing § 1983 claims where the plaintiff failed to allege how the defendants were personally involved in his being held past his conditional release date because of a delay in finding SARA-compliant housing). In addition, the fact that the body of the Complaint contains no substantive allegations regarding Jones or Annucci, (*see* Compl.), "is itself ground for dismiss[ing]" them from this Action, *D'Angelo*, 2017 WL 6514692, at \*5; *see also Manley v. Ramos*, No. 13-CV-2662, 2014 WL 1496094, at \*2 (S.D.N.Y. Apr. 16, 2014) (dismissing claims where the plaintiff "name[d] [police officers] as defendants in the caption, but ... never mention[ed] them again in the body of the complaint"); *Ortiz v. Bloomberg*, No. 10-CV-9434, 2011 WL 4822829, at \*3 (S.D.N.Y. Oct. 7, 2011) (dismissing claims where "the only named reference to [certain correctional officers] [was] in the caption of the [c]omplaint, and the only additional references to these defendants [were] merely conclusory statements about their personal involvement and liability").

**\*6** In sum, "Plaintiff has not alleged any way in which [the] Defendants were personally responsible for, or involved in the circumstances that resulted in, his continued incarceration beyond his conditional release date." *D'Angelo*, 2017 WL 6514692, at \*5. Thus, in addition to Plaintiff's failure to plead a specific violation of procedural due process requirements, his claim must also be dismissed for failure to allege Defendants' personal involvement.

Finally, qualified immunity provides a third independent basis to dismiss Plaintiff's procedural due process claim. The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). This protection attaches only "if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Coggins v. Buonora*, 776 F.3d 108, 114 (2d Cir. 2015) (citation omitted). In this context, a court "is guided by two questions: first, whether the facts show that the defendants' conduct violated [the] plaintiffs' constitutional rights, and second, whether the right was clearly established at the time of the defendants' actions." *Golodner v. Berliner*, 770 F.3d 196, 201 (2d Cir. 2014) (citation, quotation marks, and brackets omitted).

The Court need not reach the second prong of this inquiry because, as discussed above, Plaintiff has not plausibly pled that Defendants violated his constitutional rights. *See Posr v. City of New York*, No. 10-CV-2551, 2013 WL 2419142, at \*10 n.8 (S.D.N.Y. June 4, 2013) ("Because [the defendant] did not violate [the] [p]laintiff's [constitutional] rights, there is no need to consider if [the defendant] is entitled to qualified immunity."), *aff'd sub nom. Posr v. Ueberbacher*, 569 F. App'x 32 (2d Cir. 2014) (summary order). But even assuming Plaintiff's rights were violated by his confinement beyond his conditional release date, qualified immunity would still shield Defendants from suit. As noted, it remains an open question in the Second Circuit whether there is a constitutional liberty interest in conditional release. *See Doe*, 221 F.3d at 139; *Hayes*, 2016 WL 1746109, at \*3; *Muhammad*, 2014 WL 4232496, at \*7; *Ahlers*, 2007 WL 2042794, at \*5. It cannot be said, therefore, that a plaintiff's right to release upon the occurrence of his conditional release date was clearly established at the time of the alleged denial. Accordingly, Defendants are entitled to dismissal of Plaintiff's due process claim on this separate ground as well. *See D'Angelo*, 2017 WL 6514692, at \*9 (dismissing procedural due process claim based on qualified immunity where the plaintiff alleged that the defendants detained him past his conditional release date); *McKay v. City of New York*, 32 F. Supp. 3d 499, 510 (S.D.N.Y. 2014) (granting qualified immunity when the case law "provide[s] a basis for reasonable officers to disagree" as to constitutional requirement); *Estrella v. Menifee*, 275 F. Supp. 2d 452, 460 (S.D.N.Y. 2003) (granting qualified immunity "given the absence of a binding [Second Circuit] decree invalidating" the officials' actions).

Santiago v. Annucci, Not Reported in Fed. Supp. (2021)

Case 5:26-cv-00252-MAD-MJK    Document 5    Filed 04/02/26    Page 41 of 47

## 2. Eighth Amendment Claim

"The Eighth Amendment prohibits the infliction of cruel and unusual punishments on those convicted of crimes, including deprivations suffered during imprisonment, provided that they involve the unnecessary and wanton infliction of pain." *Franza v. Stanford*, No. 16-CV-7635, 2018 WL 914782, at *12 (S.D.N.Y. Feb. 14, 2018) (ellipsis and quotation marks omitted) (quoting *Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991)). "A plaintiff asserting an Eighth Amendment claim pursuant to 42 U.S.C. § 1983 must meet two requirements[:] First, the alleged deprivation must be, in objective terms, sufficiently serious[;] [and] [s]econd, the charged official must act with a sufficiently culpable state of mind." *Joseph*, 2021 WL 200984, at *9 (quotation marks omitted) (quoting *Francis v. Fiacco*, 942 F.3d 126, 150 (2d Cir. 2019)). "For extended incarceration to rise to the level of an Eighth Amendment violation, it 'must ... be the product of deliberate indifference.' " *D'Angelo*, 2017 WL 6514692, at *10 (alteration in original) (quoting *Campbell v. Peters*, 256 F.3d 695, 700 (2d Cir. 2001)); *see also Joseph*, 2021 WL 200984, at *9 (same); *Aponte v. Fischer*, No. 14-CV-3989, 2018 WL 1136614, at *10 n.8 (S.D.N.Y. Feb. 28, 2018) (same). Moreover, "to prevail on such claims, plaintiffs must normally allege that they were held beyond their maximum sentence." *Joseph*, 2021 WL 200984, at *9 (citing *D'Angelo*, 2017 WL 6514692, at *10).

**\*7** Here, Plaintiff alleges that he filed a grievance, but that his "appeal was lost." (Compl. 4.) He also alleges that he "wrote DSS on March 2020 [but] didn't receive any reply." (*Id.* at 5.) Standing alone, these allegations are insufficient to establish that Defendants were "deliberately indifferent" to Plaintiff's situation, because the Complaint "does not allege that any ... Defendant personally knew about Plaintiff's prolonged incarceration." *D'Angelo*, 2017 WL 6514692, at *10 (dismissing Eighth Amendment deliberate indifference claim where the plaintiff failed to allege that any of the defendants personally knew about his prolonged detention); *see also Armstead v. Dep't of Corrs. Comm. Supervision*, No. 13-CV-88, 2013 WL 1312017, at *4 (E.D.N.Y. Mar. 28, 2013) (dismissing complaint because it "offer[ed] no facts to show that either of the supervisory defendants actually received and read [plaintiff's correspondence], or that they were at any point aware of the circumstances of his detention"); *Beahm v. Burke*, 982 F. Supp. 2d 451, 461 (E.D. Pa. 2013) ("[I]n order to obtain relief for continued detention under § 1983, a prisoner must show that a prison official was aware of his overstay and was deliberately indifferent in rectifying the problem."); *Lozada v. Warden Downstate Corr. Facility*, No. 10-CV-8425, 2012 WL 2402069, at *3 (S.D.N.Y. June 26, 2012) (dismissing prolonged-incarceration claim against a warden because "[a] prison official cannot be personally liable under § 1983 on the basis of respondeat superior or simply because he is atop the prison hierarchy," and the complaint "fail[ed] to allege [the warden's] direct involvement" in the prolonged incarceration). Thus, Plaintiff fails to establish that any Defendant "act[ed] with a sufficiently culpable state of mind." *Francis*, 942 F.3d at 150.

Even if the Complaint had adequately pled the deliberate indifference requirement, it does not allege that Plaintiff was held beyond his *maximum* sentence, and thus, the Eighth Amendment claim fails for this reason as well. *See D'Angelo*, 2017 WL 6514692, at *10 (dismissing Eighth Amendment claim where the plaintiff had not been held beyond his maximum sentence); *see also Calhoun v. N.Y. State Div. of Parole Officers*, 999 F.2d 647, 654 (2d Cir. 1993) (holding that five days of incarceration beyond the plaintiff's maximum sentence "did not inflict a harm of a magnitude that violates a person's [E]ighth [A]mendment rights" (citation and quotation marks omitted)); *Joseph*, 2021 WL 200984, at *9 (dismissing Eighth Amendment claim against parole officer where the plaintiff had failed to "provide additional details about the maximum length of his sentence, and how long he actually served"); *Lozada*, 2012 WL 2402069, at *2 (holding that an "additional seven days of incarceration" beyond a prisoner's maximum sentence "is insufficient to bring an Eighth Amendment claim"); *Brims v. Burdi*, No. 03-CV-3159, 2004 WL 1403281, at *2 (S.D.N.Y. June 23, 2004) (holding that six days of imprisonment beyond the plaintiff's maximum sentence "is not a harm of sufficient magnitude to implicate the Eighth Amendment"); *cf. Gilblom v. Gillipsie*, No. 08-CV-1672, 2010 WL 1813494, at *9 (W.D. Pa. Apr. 6, 2010) (noting that "[c]ases in which an Eighth Amendment claim has been recognized in the context of an overstay [in prison] involve significant periods of time," and citing cases involving 145 days to two years of prolonged confinement), *adopted by* 2010 WL 1813483 (W.D. Pa. May 5, 2010), *aff'd*, 435 F. App'x 165 (3d Cir. 2011). Thus, without "additional details about the maximum length of [Plaintiff's] sentence, and how long he actually served," *Joseph*, 2021

Case 5:26-cv-00252-MAD-MJK    Document 5    Filed 04/02/26    Page 42 of 47

Santiago v. Annucci, Not Reported in Fed. Supp. (2021)

WL 200984, at *9, the Court is not prepared to hold that Plaintiff's detention "beyond his conditional release date ... rise[s] to the level of cruel and unusual punishment," *D'Angelo*, 2017 WL 6514692, at *10. [6]

### 3. Injunctive Relief

**\*8** Plaintiff's claim for a preliminary injunction against Defendants, (Compl. 5), must be dismissed. As noted *supra* note 5, "a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective injunctive relief from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d at 617 (quotation marks omitted). "To obtain prospective injunctive relief, whether preliminary or permanent, a plaintiff 'cannot rely on past injury[,] but must show a likelihood that [he] will be injured in the future.' " *Johnson v. Padin*, No. 20-CV-637, 2020 WL 4818363, at *6 (D. Conn. Aug. 16, 2020) (ellipses omitted) (quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)); *Kelly v. N.Y. State Civ. Serv. Comm'n*, No. 14-CV-716, 2015 WL 861744, at *4 n.4 (S.D.N.Y. Jan. 26, 2015) (same); *see also Pungitore v. Barbera*, 506 F. App'x 40, 41 (2d Cir. 2012) (summary order) ("[W]hen seeking prospective injunctive relief, the plaintiff must prove the likelihood of *future* or *continuing* harm."); *Joseph*, 2021 WL 200984, at *5 n.4 (same); *Krull v. Oey*, No. 19-CV-142, 2019 WL 1207963, at *10 (N.D.N.Y. Mar. 14, 2019) (same). Here, although Plaintiff seeks an injunction that would "take [him] off [the] registry [of] sex offender[s]" and would "enjoin[ ] [Defendants] from subjecting [him] to [the] provision[s] applicable to sex offender[s] under SORA or the mandatory parole condition[s] prescribed for sex offenders," (Compl. 5), he fails to allege "a likelihood of either future harm or continuing harm," *Krull*, 2019 WL 1207963, at *10. The only harm suggested in the Complaint is Plaintiff's now-former detention and the resultant "mental anguish." (*See* Compl. 3.) Because Plaintiff was released from Fishkill in February 2021, (Dkt. No. 25), and has since taken up residence in a Brooklyn apartment, (*see* Dkt. No. 26), the harm he alleges has been eliminated by virtue of his release, *cf. D'Angelo*, 2017 WL 6514692, at *11 (concluding that because the plaintiff had been released from prison since the filing of his complaint, his "request for injunctive relief in the form of his immediate release" should be dismissed as moot); *Pugh v. Goord*, 571 F. Supp. 2d 477, 489 (S.D.N.Y. 2008) (explaining that "[w]here a prisoner has been *released* from prison, his [or her] claims for injunctive relief based on the conditions of his [or her] incarceration must be dismissed as moot"). Though it is possible Plaintiff envisions other potential harm from having to comply with SORA provisions—such as stigma, or difficulty locating housing in the future—no such harm is alleged in the Complaint. (*See* Compl.) Because Plaintiff has solely "rel[ied] on past injury," without "show[ing] a likelihood that [ ]he will be injured in the future," the Court may not grant his claim for prospective injunctive relief. *DeShawn*, 156 F.3d at 344; *see also, e.g.*, *Johnson*, 2020 WL 4818363, at *6 (dismissing claim for injunctive relief where the plaintiff failed to allege future harm); *Patterson v. Patterson*, No. 16-CV-844, 2019 WL 1284346, at *6 (W.D.N.Y. Mar. 20, 2019) ("Plaintiff fails to allege an ongoing violation or threat of future enforcement of federal law that would entitle him to injunctive relief."); *Caruso v. Zugibe*, No. 14-CV-9185, 2015 WL 5459862, at *5 (S.D.N.Y. June 22, 2015) (denying claim for prospective injunctive relief because, "even if [the] defendants [had] violated [the] plaintiff's rights in the past as she allege[d]," the plaintiff "ha[d] not plausibly alleged a sufficient likelihood that she [would] again be wronged in a similar way." (citation, quotation marks, and brackets omitted)).

### III. Conclusion

For the reasons stated above, Defendants' Motion is granted. In light of Plaintiff's pro se status, and because this is the first adjudication of Plaintiff's claims on the merits, the claims are dismissed without prejudice. If Plaintiff wishes to file an amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, he must do so within 30 days of the date of this Opinion & Order. Failure to properly and timely amend will likely result in dismissal of the already-dismissed claims with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 21), and mail a copy of this Opinion & Order to Plaintiff at the address listed on the docket.

SO ORDERED.

WESTLAW  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:26-cv-00252-MAD-MJK    Document 5    Filed 04/02/26    Page 43 of 47

Santiago v. Annucci, Not Reported in Fed. Supp. (2021)

## All Citations

Not Reported in Fed. Supp., 2021 WL 4392487

---

**Footnotes**

1    Quotations from Plaintiff's Complaint reflect minor corrections in spelling and grammar.

2    Plaintiff's Complaint, which is handwritten, requests "2000.000 $^{00}$" in damages. (Compl. 5.) It is not entirely clear whether Plaintiff is requesting $2,000,000 or $200,000 in damages.

3    As the Court explained in its August 5 Order, "state agencies, including DOCCS, and state officials acting in their official capacities are generally not 'persons' subject to suit under § 1983." (Order of Serv. 2 (gathering cases).) However, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." (*Id.* (quotation marks omitted) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989)).)

4    It is possible Plaintiff forgot that his Complaint in fact purported to name the "Bureau Chief" in Brooklyn, not the Bronx. (*See* Compl. 2.)

5    Insofar as Plaintiff sues Defendants for damages in their official capacities, such a claim would be barred by sovereign immunity. *See, e.g.*, *Scott v. Rosenberger*, No. 19-CV-1769, 2020 WL 4274226, at *4 (S.D.N.Y. July 24, 2020) ("DOCCS officials enjoy Eleventh Amendment immunity from suit under § 1983 for damages in their official capacities." (citation omitted)). "[U]nder the venerable doctrine of *Ex parte Young*," however, "a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (citation omitted). Although Defendants assert that Annucci has been "sued *solely* in his official capacity as Acting Commissioner of [DOCCS]," (Defs.' Mem. 1 (emphasis added)), the Court's August 5, 2020 Order of Service did not construe Plaintiff's claim so narrowly, (*see* Order of Serv. 2). Rather, the Court merely explained that in view of Plaintiff's clear intention to seek injunctive relief, it would construe Plaintiff's claim against DOCCS as a claim against Annucci—a suable party under § 1983—instead. (*Id.*) Although the Court necessarily interprets Plaintiff's request for injunctive relief as a claim against Annucci in his official capacity, the Court's previous Order does not preclude it from also interpreting Plaintiff's request for damages as a claim against Annucci in his individual capacity. *See, e.g.*, *DeLoreto v. Ment*, 944 F. Supp. 1023, 1027, 1032 (D. Conn. 1996) (denying motion to dismiss damages claim against defendants in their individual capacities and claim for prospective injunctive relief against same defendants in their official capacities).

6    Given the various deficiencies the Court has identified with respect to Plaintiff's Eighth Amendment and Fourteenth Amendment claims, it need not reach the question whether Plaintiff's Action is barred under the *Heck* doctrine, as Defendants argue. (*See* Defs.' Mem. 4–5.) The *Heck* doctrine "is an issue that continues to cause some consternation in this Circuit," *Teichmann v. New York*, 769 F.3d 821, 828, 830 (2d Cir. 2014) (Calabresi, J., concurring), and "district courts within [this] [Circuit] have reached different conclusions as to whether a claimant may bring a [§] 1983 damages claim when the claimant is no longer in custody or otherwise cannot bring a habeas action," *Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 458–59 (E.D.N.Y. 2018) (gathering cases). Given the lingering "lack of clarity" on this question, *id.* at 458, Judge Calabresi has admonished district courts to resolve cases on non-*Heck* grounds whenever possible, *see Teichmann*, 769 F.3d at 829 (Calabresi, J., concurring) ("[M]any cases that have the potential to raise *Heck* questions can be disposed of based on well-settled principles upon which there is broad agreement, and when that is so, it is generally

Case 5:26-cv-00252-MAD-MJK    Document 5    Filed 04/02/26    Page 44 of 47

**Santiago v. Annucci, Not Reported in Fed. Supp. (2021)**

desirable for [the Second Circuit] and for district courts to decide them on these non *Heck* grounds."). Here, "where there is an obvious and overwhelming defense to the § 1983 action," the Court "need [not] reach difficult *Heck* issues." *Id.*

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

335 Fed.Appx. 102
This case was not selected for publication in West's Federal Reporter.
United States Court of Appeals,
Second Circuit.

Sandra SHEEHY, et al., Plaintiffs–Appellants,

v.

Thomas P. BROWN, et al., Defendants–Appellees.

No. 08–0102–cv.
|
June 23, 2009.

**Synopsis**
**Background:** Plaintiffs appealed, pro se, a judgment of the United States District Court for the Western District of New York, Telesca, J., sua sponte dismissing their complaint.

**Holdings:** The Court of Appeals held that:

[1] plaintiffs failed to establish § 1983 claims arising out of their allegedly false prosecutions, and

[2] plaintiffs failed to state a claim for conspiracy to interfere with civil rights.

Affirmed.

West Headnotes (2)

**[1]    Civil Rights  ⚷  Criminal prosecutions**

Plaintiffs failed to allege that their convictions or sentences were invalidated or otherwise expunged, as required to establish § 1983 claims arising out of their allegedly false prosecutions. 42 U.S.C.A. § 1983.

50 Cases that cite this headnote

**[2]    Conspiracy  ⚷  Civil rights conspiracies**

Plaintiffs failed to allege the formation of a conspiracy, and overt acts in furtherance of such conspiracy, as required to state a claim for conspiracy to interfere with civil rights. 42 U.S.C.A. § 1985.

395 Cases that cite this headnote

**\*103  UPON DUE CONSIDERATION,** it is hereby **ORDERED, ADJUDGED AND DECREED** that the judgment of the district court is **AFFIRMED.**

**Attorneys and Law Firms**

Sandra Sheehy, pro se.

Robert Sheehy, pro se.

Patrick Sheehy, pro se.

Bobbi Sheehy, pro se.

Billie Sheehy, pro se.

Casey Sheehy, pro se.

Sherry Sheehy, pro se.

PRESENT: Hon. PIERRE N. LEVAL, Hon. ROSEMARY S. POOLER and Hon. B.D. PARKER, Circuit Judges.

### *SUMMARY ORDER*

 **\*\*1**  Plaintiffs–Appellants Sandra, Robert, Patrick, Bobbi, Billie, Casey, and Sherri Sheehy, *pro se,* appeal from the judgment of the United States District Court for the Western District of New York (Telesca, J.), *sua sponte* dismissing the complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). We assume the parties' familiarity with the facts, procedural history and issues on appeal.

Having reviewed *de novo* the district court's *sua sponte* dismissal under § 1915(e), *see Giano v. Goord,* 250 F.3d 146, 149–50 (2d Cir.2001), we conclude that the district court did not err in dismissing Appellants' complaint.

 **[1]**   First, any 42 U.S.C. § 1981 or § 1983 claim against Appellees Lucy or Edward Sherwood, Thomas Fuoco, Mark Wattenberg, or Steve Presutti was properly dismissed, as private actors and institutions generally are not proper § 1983 defendants. *See American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (§ 1983 actions do not reach purely private conduct). Additionally, for an individual to recover damages for an allegedly unconstitutional conviction or imprisonment, he or she "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ... or called into question by a federal court's issuance of a writ of habeas corpus...." *Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Thus, any § 1983 claims arising out of the allegedly false prosecutions of Sandra, Patrick, or Robert Sheehy were appropriately dismissed, as Appellants did not allege that their convictions or sentences were invalidated or otherwise expunged. *Id.*

 **\*104**  As for the American Society for the Prevention of Cruelty to Animals, the Allegany County Society for the Prevention of Cruelty to Animals, and Appellee Presutti, claims against these defendants were properly dismissed, as Appellants did not allege any wrongdoing on their part or specify how they were involved in the constitutional violations alleged. *See* 28 U.S.C. § 1915(e)(2). Next, to the extent that Appellants challenge the conduct of county district attorneys or state court judges, such actors are entitled to immunity. *Nixon v. Fitzgerald,* 457 U.S. 731, 766, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982); *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

Appellants also assert § 1983 claims against: (1) county sanitation workers for entering the Sheehys' property, in violation of their property and privacy rights; (2) state troopers for use of excessive force and retaliation; and (3) Allegany County Department of Social Services employees for entering the Sheehys' property and removing the Sheehy children from their homes, in violation of their First, Fourth, and Ninth Amendment rights. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* ⸺ U.S. ⸺, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted). We conclude that because the Appellants' § 1983 allegations are so vague as to fail to give the defendants adequate notice of the claims against them, the district court did not err in dismissing them.

**\*\*2** **[2]**    Appellants also assert claims under § 1985, for which a plaintiff must allege: (1) a conspiracy, (2) which has an intent or purpose to deprive a person of equal protection of the law; (3) an act in furtherance of the conspiracy; (4) which results in an injury to a person, or a person's property, or the deprivation of a federal constitutional right. *See Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993) (per curiam). Here, the Appellants' claims of conspiracy failed to specifically allege (1) the formation of a conspiracy; or (2) overt acts in furtherance of such conspiracy. Thus, the district court correctly dismissed any claims brought pursuant to §§ 1985 and 1986.

To the extent that Appellants assert claims based on the violation of federal criminal statutes, such as 18 U.S.C. §§ 241–242, these claims are not cognizable, as federal criminal statutes do not provide private causes of action. *See Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 511 (2d Cir.1994). In addition, any claim brought under 42 U.S.C. § 2000d, which prohibits the exclusion of individuals from a federally funded program or activity on the basis of race, color, or national origin, properly was dismissed, as Appellants did not allege that they were excluded from a federally funded program or activity and, thus, no claim exists under that statute. Similarly, although former 42 U.S.C. § 13981 authorized a cause of action arising out of a crime of violence motivated by gender, the Supreme Court has held that statute unconstitutional. *See United States v. Morrison,* 529 U.S. 598, 601, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000).

We have reviewed Appellants' remaining arguments and find them to be without merit. We also note here that we see no **\*105** indication in the record that Appellants perfected service on any of the defendants in this case.

Therefore, for the reasons stated above, the judgment of the district court is AFFIRMED.

**All Citations**

335 Fed.Appx. 102, 2009 WL 1762856

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.